UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ISABEL CASTILLO, *individually and as next friend of N.C., a minor child*, | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 3:26-CV-0658-X |
| IRVING INDEPENDENT SCHOOL DISTRICT, et al., | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Isabel Castillo's (Castillo) motion for leave to file a second amended complaint (Doc. 11), and a motion to dismiss Castillo's first amended complaint from Defendants Irving Independent School District (IISD), Jessica Rodges (Rodges), and Maria Mendoza's (Mendoza) (the individuals as the "Individual Defendants") (collectively, the "Defendants"). (Doc. 10). After reviewing the record and applicable law, the Court **DENIES** the Motion for Leave, **GRANTS** the Motion to Dismiss, and **DISMISSES WITHOUT PREJUDICE** Castillo's claims.

## I. Background

This case arises out of an alleged sexual assault committed against a ten-year-old student (N.C.) at Lively Elementary School, a campus within IISD. In January 2024, Castillo alleges that another student ("Student A") intentionally, and without consent, touched N.C.'s genitals beneath her clothing while the two were left unsupervised (the "incident"). N.C. then allegedly reported the incident to

Rodges, the music teacher in charge of the class the two students were in. Castillo alleges that Rodges failed to take prompt and timely action in response to this report. Castillo also alleges that N.C. informed Mendoza of the sexual assault later that same day, but that Mendoza questioned N.C. in Student A's presence and similarly failed to act in a prompt and timely manner.

Castillo asserts that the report to Rodges and Mendoza was routed through campus reporting channels to those with authority to implement corrective action, but that IISD did not do so in an effective, adequate, prompt, or timely manner. In the following days and weeks, Castillo alleges that N.C. experienced verbal taunts related to the incident as well as feelings of fear and humiliation. N.C. then allegedly suffered an impairment in access to educational opportunities. When Castillo learned of the alleged January incident and subsequent inadequate IISD response, she sent a formal Notice of Claim to IISD in June 2024, as well as a complaint to the Texas Education Agency Special Investigations Unit.

Castillo initially brought suit for various federal claims against IISD and for various state tort claims against both IISD and the Individual Defendants.[1] Defendants moved to dismiss the original complaint.[2] Castillo then filed an amended complaint asserting only federal claims against IISD, Rodges, and Mendoza.[3] Because the amended complaint became the operative pleading, the Court denied the

[1] Doc. 1-1.

[2] Doc. 4.

[3] Doc. 7.

motion to dismiss as moot.[4] Defendants then filed a new motion to dismiss, which is now before the Court.[5] Following the filing of the Motion to Dismiss, Castillo moved for leave to file a second amended complaint, which is also before the Court.[6]

## II. Legal Standards

### A. Leave to Amend

While Federal Rule of Civil Procedure 15(a) "provides that such leave shall be freely given when justice so requires . . . it is by no means automatic."[7] The Court has discretion over whether to grant or deny leave to amend, and it "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."[8] "The Court is not required to grant leave to amend where doing so would encourage dilatory or abusive tactics, such as requesting amendment solely to force a defendant to file a new motion to dismiss."[9]

---

[4] Doc. 8.

[5] Doc. 10.

[6] Doc. 11.

[7] *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (cleaned up).

[8] *Id.*

[9] *Gore v. Cedar Hill Indep. Sch. Dist.*, No. 3:15-CV-3963-M-BN, 2016 WL 4597513 (N.D. Tex. July 26, 2016) (Horan, M. J.), *report and recommendation adopted,* No. 3:15-CV-3963-M-BN, 2016 WL 4593515 (N.D. Tex. Sept. 2, 2016).

### B. Failure to State a Claim

To survive a Rule 12(b)(6) dismissal, a complaint must "state a claim upon which relief can be granted."[10] The complaint must allege facts sufficient "to state a claim to relief that is plausible on its face."[11] And there must be sufficient facts for the Court to be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] In its evaluation, the Court construes the complaint liberally in favor of the plaintiff and accepts all well pled facts in the complaint as true.[13] Conclusory statements or legal conclusions are not credited.[14]

## III. Analysis

### A. Motion for Leave to Amend

Castillo requests leave to amend an already amended complaint, devoid of substantive changes in factual allegations or in causes of action.[15] The proposed second amended complaint merely reorganizes language from the first amended complaint into a different paragraph structure with near-identical language.[16] And many such instances of reorganization were apparently done hastily and unartfully, given the numerous instances of mid-sentence paragraph breaks.[17]

---

[10] FED. R. CIV. P. 12(b)(6).

[11] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[13] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[14] *See Iqbal*, 556 U.S. at 678.

[15] *Compare* Doc. 11-2, *with* Doc. 7.

[16] *Compare* Doc. 11-2, *with* Doc. 7.

[17] *See* Doc. 11-2 ¶¶ 12–13, 54–55, 70–71, 76–80, 99–100.

There is virtually no change in the substance of the facts alleged or the claims asserted between the two complaints, which weighs toward the factor of "futility of amendment."[18] Combined with numerous errors, this rehashed complaint does not represent a good faith effort to "more precisely frame the issues for resolution."[19] The Court thus finds the Motion for Leave to have a "dilatory motive" which will cause "undue delay" if allowed to continue unchecked.[20] The Plaintiff's is "a bold strategy," but it does not "pay[] off" here.[21] The Motion for Leave is **DENIED**.

### B. Motion to Dismiss

Without leave to amend, Castillo's first amended complaint remains the live pleading.[22] So the Court turns to the Motion to Dismiss to determine whether that complaint pleads "enough facts to state a claim to relief that is plausible on its face."[23]

#### i.Title IX Claim (against IISD)

There are two avenues for Title IX claims: (1) claims based on an institution's official policy of sex discrimination; and (2) claims based on discrimination where an appropriate person has actual knowledge of the discrimination and responds with

---

[18] *Wimm*, 3 F.3d at 139 (cleaned up).

[19] Doc. 11 ¶ 9.

[20] *Wimm*, 3 F.3d at 139 (cleaned up).

[21] *Dodgeball: A True Underdog Story* (Rawson Marshall Thurber dir., 20th Century Fox 2004) ("It's a bold strategy, Cotton. Let's see if it pays off for 'em."); *see* Doc. 12 at 2 (noting the "5 Ds of Dodgeball").

[22] Doc. 7.

[23] *Twombly*, 550 U.S. at 570.

deliberate indifference.[24] Under Title IX, a student-on-student sexual harassment claim against a school district requires that:

> (1) [The district] had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit, and (5) the district was deliberately indifferent to the harassment.[25]

To properly state a claim of deliberate indifference, a plaintiff must allege that the school district's response, or lack thereof, was clearly unreasonable in light of known circumstances—"so deficient as to *itself* constitute harassment"—or amounted to an intentional choice rather than mere negligence or unreasonableness.[26] This is a "high bar."[27] The Supreme Court has noted that "[p]eer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment."[28]

Here, taking Castillo's allegations as true, IISD did not fail to take action. Rather, it failed to take "prompt and appropriate action" that Castillo asserts would have been "reasonably calculated," "effective," and "meaningful."[29] Moreover,

---

[24] *Poloceno v. Dall. Indep. Sch. Dist.*, 826 F. App'x 359, 362 (5th Cir. 2020) (per curiam) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

[25] *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (cleaned up).

[26] *I.L. v. Hou. Indep. Sch. Dist.*, 776 F. App'x 839, 843 (5th Cir. 2019) (emphasis in original).

[27] *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) (cleaned up).

[28] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 653 (1999) (cleaned up).

[29] Doc. 7 ¶ 41.

Castillo only alleges one instance of sexual assault, followed by "continuing fear, anxiety, nightmares, and verbal taunts related to the assault."[30]

When considering a student-on-student harassment claim, the Supreme Court has explained that "[i]t is not enough to show . . . that a student has been teased . . . or called offensive names."[31] Therefore, the unspecified "verbal taunts" alleged in the complaint are not enough to show continuing harassment toward which IISD was deliberately indifferent. Further, the Fifth Circuit has held that "[s]chools are not required to remedy the harassment or accede to a parent's remedial demands . . . and courts should refrain from second-guessing the disciplinary decisions made by school administrators"[32] so long as the "response is not clearly unreasonable in light of the known circumstances."[33] Without specific factual allegations about how IISD actually responded and why its actions were clearly unreasonable—as opposed to the complaint's general assertions that IISD did not do enough—the live complaint doesn't adequately plead deliberate indifference.

Additionally, because the complaint alleges a single instance of harassment, without a specific factual allegation of IISD having prior notice, it does not rise to the level of having "the systemic effect of denying the victim equal access to an educational program or activity."[34] The assertion that "school personnel had received

---

[30] *Id.* ¶ 26.

[31] *Davis*, 526 U.S. at 652 (cleaned up).

[32] *Sanches*, 647 F.3d at 167–68 (cleaned up).

[33] *Menzia v. Austin Indep. Sch. Dist.*, 47 F.4th 354, 364 (5th Cir. 2022) (cleaned up).

[34] *See Davis*, 526 U.S. at 652–53 ("[A]lthough, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student

or were aware of prior concerns involving inappropriate touching and/or similar misconduct by Student A" is conclusory and does not serve to establish notice by IISD such that they were deliberately indifferent to the incident itself.[35]

Castillo's Title IX claim is currently deficient for failing to allege that IISD responded with deliberate indifference once it had actual notice of any specific case of harassment. The Court **GRANTS** the Motion to Dismiss as to Castillo's Title IX student-on-student harassment claim.

### ii. *Monell* Liability Claim (against IISD)

Municipal and county governments may be sued under section 1983 if they are "alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[36] This municipal, or *Monell*, liability applies to school districts.[37] To establish *Monell* liability, a plaintiff "must plead facts that plausibly establish that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[38]

#### *Official Policy*

Castillo does not adequately plead the existence of an official policy for the purposes of establishing *Monell* liability.

---

misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment.") (cleaned up).

[35] Doc. 7 ¶ 33.

[36] *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (cleaned up).

[37] *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994).

[38] *St. Maron Props., L.L.C. v. City of Hou.*, 78 F.4th 754, 760 (5th Cir. 2023) (cleaned up).

> There are three ways of defining an official custom or policy for the purposes of *Monell* liability: 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. 3. A single decision may also constitute municipal policy in the rare circumstance when the official or entity performing the specific act that forms the basis of the section 1983 claim is the official or entity possessing final policymaking authority.[39]

"Liability must rest on official policy, meaning the governmental entity's policy, not the policy of an individual official."[40] For the purposes of section 1983, a policy is defined as "duly promulgated policy statements, ordinances or regulations."[41] A custom is defined as "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy."[42]

Here, the complaint only alleges specific facts as to IISD's response to the incident, without any assertions related to other responses. This is insufficient to

[39] *Fareed v. City of Carrollton*, No. 3:24-CV-3251-N, 2025 WL 1707957, at *2–3 (N.D. Tex. June 17, 2025 (Godbey, C.J.) (cleaned up).

[40] *Hoskins v. Kaufman Indep. Sch. Dist.*, No. 3:03-CV-0130-D, 2003 WL 21517830, at *6 (N.D. Tex. June 30, 2003) (Fitzwater, J.) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)).

[41] *Piotrowski v. City of Hou.*, 237 F.3d 567, 579 (5th Cir. 2001).

[42] *Id.* (quoting *Webster v. City of Hou.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

establish a "persistent, widespread practice," so Castillo fails on *Monell*'s first prong.[43]

### *Policymaker*

The chief policymaker for IISD is its Board of Trustees.[44] However, Castillo is not required to plead the identity of IISD's policymaker. Instead, she must plead with "more than speculation that any particular policymaker . . . knew about the alleged custom."[45] The complaint falls short of this standard, stating in conclusory terms that the IISD's Board of Trustees "and/or one or more properly delegated final policymakers for student-safety response, maintained, approved, knowingly permitted, ratified, or were deliberately indifferent to the constitutionally deficient policies, customs, and practices described herein."[46] Without more, the complaint does not specifically allege any facts to establish that the Board of Trustees knew about any policy or custom.

### *Moving Force*

Castillo alleges IISD's policies "were a moving force behind the violation of N.C.'s rights under the Equal Protection Clause."[47] To plead a moving force, "a

---

[43] *Fareed*, 2025 WL 1707957, at *2–3 (cleaned up).

[44] TEX. EDUC. CODE §§ 11.151, 11.1511, 11.1513, 11.171.

[45] *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (cleaned up).

[46] Doc. 7 ¶ 51; *see* Doc. 7 ¶ 54 ("Alternatively and additionally, upon information and belief, IISD's final policymakers and/or properly delegated final policymakers were deliberately indifferent to the obvious need for constitutionally adequate training, supervision, escalation protocols, and protective-response measures for elementary-school staff confronted with reports of student-on-student sexual assault, making the resulting violation of a female student's equal-protection rights highly predictable.").

[47] Doc. 7 ¶ 55.

plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[48] The "municipal decision" must "reflect[] deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."[49] The Fifth Circuit has made clear that this is a "high standard."[50] "The connection must be more than a mere but for coupling between cause and effect."[51] So "a showing of simple or even heightened negligence will not suffice."[52]

Castillo needs to plead a sufficient number of prior similar instances (of legally inadequate investigations of student-on-student harassment) that the board was aware of before this incident to show that it was essentially a board-approved IISD custom to have legally inadequate investigations. Castillo's allegations fail to meet *Monell*'s demanding causation requirement. Even assuming there was an official custom or policy promulgated by a final policymaker in relation to the incident, Castillo has not sufficiently pled either that it was the moving force behind subsequent constitutional violations or that it was the cause of the incident.

---

[48] *Valle v. City of Hou.*, 613 F.3d 536, 542 (5th Cir. 2010) (cleaned up).

[49] *Id.*

[50] *Id.*

[51] *Id.* at 546 (cleaned up).

[52] *Id.* at 542 (cleaned up).

### *Deliberate Indifference—Failure to Train*

To make a claim of failure to provide proper training for *Monell* liability to attach, a plaintiff must show "(1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a moving force in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy."[53] "In order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective."[54]

The Fifth Circuit has "been wary of finding municipal liability" for failure to train claims based on a single incident.[55] "Absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an obvious or highly predictable consequence of the alleged training inadequacy."[56] "For a violation to be highly predictable, the municipality must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face."[57] "Only where a failure to train reflects a deliberate or conscious choice by a municipality . . . can a city be liable for such a failure under § 1983."[58]

---

[53] *Id.* at 544 (cleaned up).

[54] *Zarnow*, 614 F.3d at 170 (cleaned up).

[55] *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003) (cleaned up).

[56] *Littell v. Hou. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (cleaned up).

[57] *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 482–83 (5th Cir. 2021) (cleaned up).

[58] *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (cleaned up).

Because Castillo has not adequately pled a policy, pattern, or custom, or a failure to train, the Court finds that she has failed to meet the standard to plead *Monell* liability. Therefore, the Court **GRANTS** the Motion to Dismiss as to Castillo's *Monell* liability claim.

**iii.Individual Liability Claim (against Rodges and Mendoza)**

The Motion to Dismiss also alleges that qualified immunity bars Castillo's Equal Protection claims against Rodges and Mendoza. When a defendant raises qualified immunity as a defense, the analysis changes and the burden shifts to the plaintiff to show (1) the violation of a constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[59] "Therefore, unless existing precedent squarely governs the conduct at issue, an official will be entitled to qualified immunity."[60] "The burden here is heavy," as a "right is clearly established only if preexisting precedent has placed the constitutional question beyond debate."[61] That heavy burden is not met with citation to general principles.[62]

Castillo contends that:

> Rodges had actual notice of the reported sexual assault when N.C. immediately reported that Student A had touched her private area during class. Despite receiving that report, Rodges failed to take prompt and effective action reasonably calculated to protect N.C., including failing to secure immediate separation of the students, failing to obtain

---

[59] *See Connelly v. Tex. Dep't of Crim. Just.*, 484 F.3d 343, 346 (5th Cir. 2007).

[60] *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (cleaned up) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)).

[61] *Harmon v. City of Arlington*, 16 F.4th 1159, 1165 (5th Cir. 2021) (cleaned up) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

[62] *See id.* at 1165–66.

> immediate administrative intervention, failing to ensure timely notification to N.C.'s parent, and failing to initiate or ensure prompt escalation of the report to officials able to protect N.C. and prevent further harm.[63]

As to Mendoza, Castillo asserts that:

> Mendoza likewise had actual notice of the reported assault when N.C. reported the incident to her later that same day. Despite receiving that report, Mendoza failed to take prompt and effective protective action and instead questioned N.C. in the presence of Student A, thereby further humiliating and traumatizing N.C. and failing to safeguard her from continued fear, exposure, and hostile educational conditions.

Castillo cites *Fitzgerald v. Barnstable School Committee*[64] for the proposition "that schoolchildren are protected against sex-based discrimination under the Equal Protection Clause and that school officials may not, after actual notice of known sex-based harm, respond with deliberate indifference in a manner that leaves the student exposed to continuing injury and unequal educational conditions."[65] However, this case did not reach the merits, and the facts alleged involved multiple incidents of inappropriate sexual touching without mention of any "verbal taunts" as raised in the complaint at issue here.[66]

While "it is not necessary that a previous case presenting identical facts exist in order for a right to be clearly established,"[67] courts still require that the

---

[63] Doc. 7 ¶ 60.

[64] 555 U.S. 246, 257–58.

[65] Doc. 13 ¶ 17.

[66] *See Fitzgerald*, 555 U.S. at 249–50.

[67] *Aguirre v. City of S.A.*, 995 F.3d 395, 415 (5th Cir. 2021).

"unlawfulness of the challenged conduct must be beyond debate," especially when the plaintiff fails to point to any case law that squarely governs the undisputed facts.[68]

Here, Castillo has failed to identify a single case that governs the specific conduct at issue here. Because "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity," there has been no assertion of the violation of a clearly established right.[69] Assuming without deciding that Castillo could show that Rodges and Mendoza's actions constituted unconstitutional deliberate indifference in violation of section 1983, this is not an obvious case of unlawful conduct "beyond debate."[70] Rodges and Mendoza are entitled to qualified immunity as a matter of law.

## IV. Dismissal without Prejudice

Next, the Court must consider whether dismissal should be with or without prejudice. "District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."[71] While Castillo has already amended her complaint once as of right, she has not done so with the benefit of the Court

---

[68] *Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (cleaned up).

[69] *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x. 194, 198 (5th Cir. 2015) (per curiam).

[70] *Id.* (cleaned up).

[71] *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, J.) (cleaned up).

identifying the defects in her complaint. So the Court grants leave to file an amended complaint no later than 28 days after this order.

## V. Conclusion

Accordingly, the Court **DENIES** the Motion for Leave, **GRANTS** the Motion to Dismiss, and **DISMISSES WITHOUT PREJUDICE** Castillo's claims. The Court also **GRANTS** Castillo leave to amend her complaint to cure its deficiencies within 28 days of the issuance of this Order. Castillo's amended complaint is limited to curing the deficiencies identified by the Court. Castillo cannot add new claims or parties to the amended complaint.

**IT IS SO ORDERED** this 3rd day of August, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE